## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 3V, INC., a Delaware Corporation, | |
| Plaintiff, | C.A. No. 06-00593-JJF |
| v. | |
| CIBA SPECIALTY CHEMICALS CORPORATION, a Delaware Corporation, | |
| Defendant. | |
| CIBA SPECIALTY CHEMICALS CORPORATION, a Delaware Corporation, | |
| Cross-Plaintiff, | C.A. No. 06-00629-JJF |
| v. | |
| 3V, INC., a Delaware Corporation, | |
| Cross-Defendant. | |
| CIBA SPECIALTY CHEMICALS CORPORATION, a Delaware Corporation, | |
| Plaintiff, | C.A. No. 06-00672-JJF |
| v. | |
| 3V, INC., a Delaware Corporation, | |
| Defendant. | |

## 3V, INC.'S ANSWERING BRIEF IN OPPOSITION TO CIBA'S MOTION FOR LEAVE OF COURT TO SERVE LIMITED DISCOVERY

Dated: May 5, 2008

Angelica M. Colwell *(admitted pro hac vice)*
NEXSEN PRUET, LLC
PO Box 486
205 King Street, Ste. 400
Charleston, South Carolina, 29402
*Attorneys for 3V, Inc.*

Joseph Grey (ID 2358
STEVENS & LEE, P.C.
1105 North Market Street, Seventh Floor
Wilmington, DE 19801

*Attorneys for 3V, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND.............................................................................................. 2

DISCUSSION ................................................................................................................. 5

    A.   The motions filed by CIBA are procedurally illogical with CIBA basically
          attempting to compel answers to discovery requests that had not been, and should
          not be, served on 3V. ........................................................................................... 5

    B.   Response to CIBA's discussion of the settlement negotiations. ......................................... 8

    C.   Response to CIBA's contention that it incurred hundreds of thousands of dollars in
          unnecessary fees and expenses because it was unaware of 3V's disclaimer. ................... 9

    D.   Response to CIBA's contention that 3V ignored all discovery obligations. .................... 10

    E.   This case does not meet the criteria of an "exceptional" case to support any award of
          attorneys fees under 35 U.S.C. § 285. ............................................................... 14

CONCLUSION.............................................................................................................. 19

i

# TABLE OF AUTHORITIES

Page

## CASES

*Aventis Cropscience, N.V. v Pioneer Hi-Bred Intern, Inc.*, 294 F.Supp.2d 739 (M.D.N.C. 2003)..................................................................................... 14

*Beckman Instruments, Inc. v . LKB Produkter AB*, 892 F.2d 1547 (Fed. Cir. (Md.) 1989) ........................................................................................................ 14

*Chavous v. District of Columbia Financial Responsibility and Management Assistance Authority*, 201 F.R.D. 1  (D.D.C. 2001)............................................6-7

*Coastal States Gas Corp. v. Department of Energy*, 84 F.R.D. 278 (D.Del. 1979) .................... 7

*Feldman v. Flood*, 176 F.R.D. 651 (M.D.Fla. 1997) ................... 7

*Ladd v. Equicredit Corp. of Am.*, No. CIV.A. 00-2688, 2001 WL 175236 (E.D.La. Feb. 21, 2001) ...................................................................................... 7

*McCabe v. Foley*, 233 F.R.D. 683 (M.D.Fla. 2006) .................................. 7

*Microstrategy Inc. v Crystal Decisions, Inc.*, No. 03-1124-MPT, 2008 WL 782842 (D.Del. Mar. 25, 2008)........................................................15-16

*Petrus v. Bowen*, 833 F.2d 581 (5th Cir. 1987) .......................................... 7

*Tenax Corp. v. Tensar Corp.*, No. H-89-424, 1991 WL 336921 (D. Md. Apr. 30, 1991) ...............................................................................................17-18

*W.L. Gore & Assoc. v. Oak Materials Group*, 424 F.Supp. 700 (D.Del. 1976) ......................... 15

*White v. Fraternal Order of Police*, 909 F.2d 512 (D.C.Cir. 1990) ............................................ 7

## STATUTES AND RULES

Fed. R. Civ. P. 26(b) ....................................................................................5, 6, 10

Fed. R. Evid. 408 ................................................................................................. 8

35 U.S.C. § 285..............................................................................................6, 14

SL1 814964v1/101873.00001

## INTRODUCTION

CIBA has come before the Court seeking leave to issue "limited and narrow" discovery requests focusing upon 3V's decision to file a disclaimer of its 5,658,973 patent ("the '973 patent") and, subsequently, a Motion to Dismiss all cases where the '973 patent was the subject matter at issue. CIBA's motion for discovery and suggestions of litigation misconduct against 3V's counsel were made prematurely – before any decision by this Court on dismissal and even before 3V had filed its Reply brief to CIBA's Opposition to the Motion to Dismiss.

CIBA's request for additional discovery must be denied. It is completely clear from CIBA's motion that CIBA has nothing to substantiate its potential claim. As 3V has already stated, the instant motion is nothing more than a blatant attempt for CIBA to "go fishing" for something to use to support the motion for costs, fees and sanctions it has contemplated filing. The information sought by the requests is relevant to nothing in the pending cases outside of CIBA's potential motion for costs, fees and sanctions. Moreover, all information relating to 3V's decision outside of the actual disclaimer form that has already been produced is either protected attorney work product or privileged attorney-client information or both. 3V has no obligation to turn over any such information.

The facts do not show that 3V sat on the disclaimer for an extended period of time before moving for dismissal of the cases. In fact, the motions were filed less than seven days after the disclaimer was filed and only one day before the deadline ordered by this Court for submitting motions challenging jurisdiction. Just two weeks prior the parties were still negotiating a possible settlement of the cases. The disclaimer was not filed until it became obvious to 3V that acceptable settlement terms were not likely to be reached. 3V has always fully participated in

1

attempts to settle this case whether by exchange of written correspondence, phone conferences, or in person meetings. CIBA has nothing to support any allegation of bad faith.

## FACTUAL BACKGROUND

As this Court knows, all of the cases before this Court between these parties have arisen from Interference No. 105,262 declared by the Board of Patent Appeals and Interferences of the United States Patent Office ("the Board") on May 24, 2005. 3V had nothing to do with the beginning of this proceeding, which called into question a patent that had been issued to 3V nearly eight years earlier on August 19, 1997. The Interference was provoked by the examination of CIBA's '291 application, which had been filed on February 22, 2002.

Declaration of the Interference left 3V with little choice but to participate in the Interference in order to protect its rights in the '973 patent that 3V had enjoyed for nearly eight years. Subsequently, when the Board finally issued its decision on July 27, 2006, it was adverse to 3V in finding several claims of the '973 patent unpatentable, awarding priority to CIBA which resulted in allowing CIBA to add claim 28 to the '291 application thereby keeping that application alive, and in denying motions made by 3V seeking to declare the claims of CIBA's '291 application as unpatentable. Again, 3V was forced to take action if its '973 patent was to be protected. CIBA is absolutely incorrect in asserting that appeal was undertaken for any other reason.

3V was the first to appeal the decision of the Board on September 25, 2006, giving rise to C.A. No. 06-00593-JFF. However, shortly thereafter CIBA filed its own Cross-Complaint commencing a second independent action on October 10, 2006 (C.A. No. 06-629-JFF). Three days later, CIBA filed its Answer to 3V's initial Complaint and included a Counterclaim. Despite both the Counterclaim and Cross-Complaint, on October 31, 2006, CIBA filed another

2

completely independent Complaint to commence a third action, C.A. No. 06-672-JFF. All of these were being handled through the single consolidated action at issue.

3V's current out-of-state counsel became involved in this action on July 6, 2007. *See* Declaration of Angelica M. Colwell ("Colwell Declaration") at ¶2. Even though the cases had been pending approximately ten (10) months by that time, the cases had not moved beyond the preliminary stages of discovery. Efforts were made to move the case forward by setting the "meet and confer" referenced in Attorney Branigan's Declaration for August 9, 2007. The correspondence attached to Mr. Branigan's Declaration as Exhibit A was received by current counsel and does reflect the discussions that occurred. Colwell Declaration at ¶3. As reflected by this correspondence, CIBA was informed that Kevin Blakely, an in-house employee of 3V's, would be handling the ESI searches. Shortly after the letter was received, on August 16, 2007, 3V's counsel sent correspondence directed to Mr. Branigan to clarify 3V's responses to several of CIBA's discovery requests. *See* correspondence attached as Ex. 1. That letter also indicates that "...[upon] receiving this case, we took appropriate measures to ensure that 3V cease automatic deletion procedures and preserve all electronically stored information ("ESI") relevant to the subject matter of this action." *See* Ex. 1, p. 2.

The letter from 3V's counsel further indicated that "...we look forward to receiving the documents CIBA promised to prior counsel and moving discovery forward in this case." Id. This references another conversation from the meet and confer in which CIBA's counsel promised to produce documents responsive to 3V's First Set of Requests for Production of Documents, which had been pending since May 23, 2007. Colwell Declaration at ¶5. On June 5, 2007, well before the meet and confer was even scheduled, 3V had responded to CIBA's initial requests for production and produced 2,759 pages of documents. Colwell Declaration at

3

¶6.    3V then supplemented its responses to the requests shortly after the meet and confer, as it had promised to do. Colwell Declaration at ¶4.    CIBA, on the other hand, did not produce any documents whatsoever to 3V until documents were produced in response to 3V's initial discovery requests on March 4, 2008. Colwell Declaration at ¶7.    This was nearly a year after receiving the requests and seven months after promising 3V's counsel at the meet and confer that the documents would be forthcoming.[1]    It is the textbook definition of a delay.

CIBA has disingenuously represented that 3V "…forced [CIBA] to spend hundreds of thousands of dollars on its electronic discovery" (see CIBA's Opening Brief, p. 2 at ¶3).    3V did nothing of the sort.    The electronic discovery that CIBA is complaining of was needed not only as part 3V's appeal but also for CIBA's Counterclaim, Cross-Complaint and other Complaint. Moreover, nothing required CIBA to handle its electronic discovery by hiring an outside search firm.    CIBA along with its counsel were responsible for this decision and CIBA should have been made aware of the potential costs prior to doing so.    CIBA's costs were attributable not only to this choice but also the extent of the searches undertaken which in turn depends upon the size of CIBA's databases.    The correspondence attached as Ex. B to the Branigan Declaration confirms that CIBA has a large amount of electronically stored information ("ESI") that had to be searched.    Further, according to Mr. Branigan's own Declaration, these searches, which led to the bulk of CIBA's claimed costs, were already completed by March 20, 2008.    Even if CIBA's counsel had been served with notice of filing of the Disclaimer at that time, which 3V had no obligation to do, CIBA costs would not have been avoided.

Finally, CIBA has completely ignored the fact that it had been informed of the possible filing of the disclaimer by 3V.    During a telephone discussion about a possible settlement on

---

[1] Worse yet, the documents were produced without any indication as to the requests to which they were responsive, even though Mr. Branigan had complained to previous counsel about that very problem one year earlier. *See* correspondence attached as Ex. 2, p. 1.

March 6, 2008, CIBA's settlement counsel was informed that 3V had looked into disclaimer as a way to end the litigation if a settlement could not be reached. Colwell Declaration at ¶14. As was accurate at the time, CIBA's counsel was also informed that 3V had not made a final decision to follow that route and would turn to it only if settlement efforts failed. Colwell Declaration at ¶14. In short, there was nothing "secret" about 3V's disclaimer except the conversations it had with its own counsel leading up to its decision and the instruction to its counsel to file the disclaimer, which conversations it is permitted by law to keep secret as protected attorney-client communications.

## DISCUSSION

### A.    The motions filed by CIBA are procedurally illogical with CIBA basically attempting to compel answers to discovery requests that had not been, and should not be, served on 3V.

It is inarguable that the discovery requests CIBA is seeking to serve – which were only revealed to 3V for the first time by attachment to the Motion for Leave – call for the production of information that constitutes either privileged attorney-client information or attorney work product. CIBA first indicated their plan to file a motion seeking this additional discovery in the Response in Opposition it filed to 3V's Motion to Dismiss, basically attempting to compel responses even though no requests had actually been served upon 3V. Presumably, CIBA chose such illogical strategy in an attempt at an end-around 3V's ability to assert an objection based on privilege to each specific request. Whatever the motive, CIBA must not be allowed to ignore accepted principles established by the Federal Rules of Civil Procedure and other rules which govern discovery inquiries.

Specifically, Fed. R. Civ. P. 26(b) sets forth the scope of discovery, limiting it to "...nonprivileged matter that is *relevant to any party's claim or defense* ..." (emphasis added).

CIBA has made no attempt in any of its motions to argue that any of the information being sought is relevant to any of its claims made in the above-captioned actions. Rather, CIBA has made very clear that its need for additional discovery is aimed at assembling evidentiary grounds to support a potential motion seeking sanctions against 3V or its counsel. Since it would be impossible for CIBA to establish that 3V's claims were frivolously asserted without affecting the merits of the similar claims it filed asserting exceptions to the same decision of the Board, CIBA has been forced to manufacture a claim of "exceptionality" so that sanctions might be obtained under 35 U.S.C. § 285.

No motion has actually been filed by CIBA, however, because CIBA has no basis for any such allegations. At this point, CIBA has merely claimed that the circumstances surrounding the filing of 3V's disclaimer "suggest that 3V engaged in litigation misconduct." *See* CIBA's Opening Brief, p. 8. CIBA has nothing other than its own speculation to support its contention that 3V committed litigation misconduct. CIBA's admission that it only *intends* to demonstrate alleged misconduct by 3V confirms the non-existence of any actual evidence tending to prove this allegation at present. The motions filed by CIBA culminating in the Motion for Leave are nothing more than an attempt to remedy this fatal flaw to CIBA's case for sanctions. Such discovery must not be permitted given the limitation in Rule 26(b) rendering improper "fishing expeditions" such as the now one being pursued by CIBA.

Moreover, it would be appropriate for this Court to prohibit any discovery now that 3V has filed a Motion to Dismiss that 3V contends should dispose of all the cases between the parties. It is well-settled that a stay of discovery pending determination of dispositive motions is an appropriate exercise of a trial court's discovery to manage discovery. *See Chavous v. District of Columbia Financial Responsibility and Management Assistance Authority*, 201 F.R.D. 1, 2

(D.D.C. 2001), citing *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) (citations omitted); *Ladd v. Equicredit Corp. of Am.*, No. CIV.A. 00-2688, 2001 WL 175236, at *1 (E.D.La. Feb. 21, 2001); *White v. Fraternal Order of Police*, 909 F.2d 512, 517 (D.C.Cir. 1990). In *Chavous* the court cited with approval a case from the District of Delaware in which it was observed that "[a] stay of discovery pending the determination of a dispositive motion 'is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.'" *Chavous*, 201 F.R.D. at 2, citing *Coastal States Gas Corp. v. Department of Energy*, 84 F.R.D. 278, 282 (D.Del. 1979)(citations omitted). In general, the requirement is for a court to take a "preliminary peek" at the merits of a dispositive motion to see if it "appears to be clearly meritorious and truly case dispositive. *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D.Fla.2006), citing *Feldman v. Flood*, 176 F.R.D. 651, 652-653 (M.D.Fla. 1997). There should be no question that 3V's motion is "clearly meritorious and truly case dispositive" since it is based on the disclaimer of the patent that had been at issue between the parties and termination of any justiciable case or controversy for the exercise of this Court's jurisdiction.

CIBA's dissatisfaction with the filing of the disclaimer is puzzling. The logical thought would be that CIBA would view the disclaimer, which removed the interfering patent as a hindrance to its application, as favorable. Instead, CIBA has done nothing but complain about the disclaimer through multiple motions that are forcing 3V to put time and efforts into a case in which has no interests to protect. The Court could prevent this waste of time and resources and the waste of its own judicial resources by staying any further discovery pending resolution of 3V's dispositive motion.

**B.**    **Response to CIBA's discussion of the settlement negotiations.**

3V does agree with CIBA's assessment of the settlement discussions as long and drawn out. 3V maintains that references to the settlement discussions such as those first broached in CIBA's Opening Brief are in violation of Fed. R. Evid. 408. The history of the settlement discussions is superfluous information not needed to establish any aspect of CIBA's positions. CIBA should not be permitted to cite these discussions which would generally be protected from consideration as "evidence" for their claim. But since CIBA has opened the door, it is only fair for the Court to also see 3V's side of the story.

3V did not do anything to drag out settlement negotiations as CIBA has suggested. The settlement negotiations that 3V ended on March 13, 2008 began with CIBA's telephone calls offering terms of settlement nearly as soon as current out-of-state counsel became involved in the cases.[2] Colwell Declaration at ¶8. A settlement conference was then held with the parties in attendance on October 29, 2007. Colwell Declaration at ¶9. Additional negotiations occurred by phone while CIBA prepared a proposed settlement and license agreement in writing to specify all terms of their settlement demand.[3] Colwell Declaration at ¶10. 3V did not receive the first draft of CIBA's proposed agreement until January 25, 2008. Colwell Declaration at ¶11.

3V's counsel gave preliminary comments on the proposed agreement to CIBA on January 30, 2008 and followed that up more specific comments on February 13, 2008. Colwell Declaration at ¶12. At that time CIBA's counsel was also informed that primary responsibility for the case would be shifting due to a maternity leave. Id. On March 11, 2008, 3V provided CIBA its proposed revisions to CIBA's written agreement. Colwell Declaration at ¶13. All

---

[2] This was not the parties' first attempt at settlement, however. Previous counsel had also attempted to negotiate a settlement without success.

[3] 3V also proposed referral of the cases to Magistrate Judge Thynge for mediation and this idea was embodied in the Second Amended Scheduling Order. However, a mediation session was never scheduled.

further negotiations of terms were done by phone until 3V ended the negotiations until March 13, 2008 indicating no further authority for ongoing discussions. Colwell Declaration at ¶17.

CIBA then sent the unsolicited offer of settlement referenced in paragraph 11 of Mr. Branigan's Declaration on March 21, 2008. Colwell Declaration at ¶18. This offer was passed on to 3V for consideration as required. As reflected in the email attached as Ex. C to Mr. Branigan's Declaration, 3V's counsel never suggested that 3V was still considering a settlement offer at that time. In fact, it was quite the opposite with CIBA being told again that 3V had no interest in settlement. *See* Branigan Declaration, Ex. C. Though CIBA has suggested that 3V's counsel was obligated to serve or inform them of the filing by some requirement of the Patent Office, CIBA again failed to cite any specific authority for that assertion.

**C.    Response to CIBA's contention that it incurred hundreds of thousands of dollars in unnecessary fees and expenses because it was unaware of 3V's disclaimer.**

CIBA's contention is incorrect on two counts: first, that 3V "forced" CIBA to expend the amount of money it did on electronic discovery and second, that CIBA was wholly unaware of 3V's disclaimer. 3V did not "force" any action undertaken by CIBA in the handling of electronic discovery in the above-captioned cases. CIBA cannot simply ignore the fact that the electronic discovery at issue was being pursued not only for 3V's appeal but also to work up its own Counterclaim, Cross-Complaint and other Complaint. If any party is to be held to have "forced" actions in this case it should be CIBA since it has three appeals pending in comparison to 3V's one. 3V's appeal was not the only case driving the discovery.

The remaining count concerns the fact that 3V did nothing to "force" the method by which CIBA chose to comply with discovery. CIBA decided to hire the outside firm to do the discovery and the extent of the discovery to undertake. CIBA also, apparently, has an extensive

9

amount of information relevant to this action stored electronically. The size of CIBA's databases contributed to the cost of the search, which CIBA has claimed, without any supporting documentation, was $2,700.00 per gigabyte. *See* correspondence attached as Ex. B to the Branigan Declaration.

CIBA did not produce its key word list to 3V before having its vendor run the searches but certainly could have done so. Id. Further, CIBA never objected to the discovery as being unduly costly, as it could have done under Fed. R. Civ. P. 26(b)(2)(B).[4] This would have forced 3V to decide whether to file a motion to compel the discovery, and it probably would have avoided all of the costs of which CIBA now complains.

CIBA has come forward with nothing to support the entitlement it has claimed to conduct discovery as to 3V's decision to disclaim the '973 patent. Even if CIBA had managed to produce something, however, it would still not be entitled to discovery related to when 3V made its decision since such information is clearly protected by attorney-client privilege. Any information that may have led up to 3V's decision constitutes attorney-client work product and is also privileged. Accordingly, CIBA's requests for leave to serve its additional discovery requests must be denied.

**D.    <u>Response to CIBA's contention that 3V ignored all discovery obligations.</u>**

As explained in the Factual Background section, there is no support for CIBA's contention that 3V ignored all discovery obligations in this case. 3V timely responded to the

---

[4] Fed. R. Civ. P. 26(b)(2) sets forth the Specific Limitations on Electronically Stored Information, as follows: "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery."

initial discovery requests and timely produced actual documents to CIBA in response to those requests. CIBA, on the other hand, failed to produce any documents whatsoever until March of this year. This occurred despite the assurance of CIBA's attorney during the meet and confer in August 2007 that the documents would be forthcoming. CIBA just has no room to complain about shortcomings in discovery tactics.

Additionally, CIBA lacks any support for its contention that 3V's counsel was not making arrangements for the depositions of Messrs. Guido Cesani, Kevin Blakely and Luigi Radaelli. CIBA had requested. CIBA's request was first received by 3V's current counsel after March 11, 2008 (*See,* correspondence attached as Ex. B to Branigan Declaration). As indicated in the correspondence in which the request was made, CIBA claims that the original request for these deposition was made on May 16, 2007. Id. at p. 2. This was two months before current counsel became involved in the case. As was subsequently explained in the responsive correspondence, 3V's current counsel had not seen any request for depositions from CIBA in the file and had no recollection of receiving any request after the meet and confer. *See* email correspondence dated March 12, 2008 attached as Ex. 3.

It was noted in this correspondence that counsel was looking into the requests as promised while settlement negotiations were also being pursued. However, Messrs. Cesani and Radaelli reside in Italy and are not employees of 3V. Colwell Declaration at ¶15. 3V did not believe it held any power over either of these witnesses. The matter obviously required additional research to fully flesh out if whether sound legal grounds existed for 3V to object to CIBA's requests. Such research had been started but not completed by March 20, 2008. Colwell Declaration at ¶16.

Regarding CIBA's suspicions of spoliation of evidence, CIBA had been assured by current out-of-state counsel after the meet and confer that measures had been taken to inform 3V of its obligation to preserve its ESI. See Ex. 1. However, it must also be recognized that 3V had previously confirmed that data had not been deleted or destroyed in response to CIBA's discovery requests on this issue. See 3V's Responses to CIBA's Interrogatories attached as Ex. 4, No. 15. 3V had also informed CIBA of its data backup procedures and document/data retention policies in response to other discovery requests. See Ex. 4, Nos. 12-16. None of these Interrogatories was included in the group of Interrogatories for which CIBA had requested supplementation from 3V's previous counsel on May 17, 2007. As a result, no additional information was produced to supplement these responses by 3V's counsel.

3V has been forthcoming in its discovery responses and production of documents that are within 3V's possession or control. However, many requests made by CIBA were for information or documents that are not within 3V's possession or control. For example, several of CIBA's Requests for Production contained in subparagraphs of No. 9 seek information and/or documents that may have been kept by Raspanti, the inventor named on the '973 patent. Raspanti lived and worked in Italy and is now deceased, which had been made known to CIBA. See Ex. 4, Nos. 19 and 24. 3V, Inc. did agree to produce all non-privileged documents in its possession but did not locate any such information.

Specifically addressing CIBA's complaint about documents related to 3V's application for a Chemical Abstract Service (CAS) registry number for "Uvasorb HA88," CIBA did not simply say "no documents exist" as CIBA suggests, but rather that "...3V would produce non-privileged documents in its possession, custody or control, if any exist, that are responsive to this request." See 3V's Responses to CIBA's Requests for Production of Documents attached as Ex.

12

5, No. 9dd. While preparing this Response, 3V's counsel did locate documents pertaining to the CAS registry number and other matters which were going to be produced to CIBA. *See* Colwell Declaration, ¶19. It was not previously known that these documents had not been produced. *See* Colwell Declaration, ¶20. These documents were not intentionally withheld from CIBA and would have been produced if the cases had continued as current counsel completed review of the file and attended to outstanding issues. *See* Colwell Declaration, ¶21. After filing the disclaimer, counsel's efforts have focused upon preparing the Motion for Dismissal for timely filing and to preparing the responses to CIBA's motions, including this one. The documents will be produced if any of the cases are continued after this Court has ruled on 3V's Motion to Dismiss.

CIBA's contention that 3V has "ignored" this case is without merit. The foregoing demonstrates that 3V has been steadily working on this case to adequately respond to CIBA's discovery requests and produce its own discovery requests while simultaneously participating in negotiations toward a possible settlement. CIBA has absolutely no evidence that 3V was using the settlement negotiations as a "stalling" tactic. In fact, CIBA could have accelerated the negotiations by producing their written demand to 3V before January 25, 2008. Ultimately, CIBA again dictated a timeframe for negotiations by indicating on Monday, March 10, 2008 that its last offer of settlement would remain open until Friday, March 14, 2008. 3V's counsel participated fully in the negotiations during that week and worked diligently to attempt a resolution of this matter. *See* Colwell Declaration, ¶13.

3V fully complied with the deadlines set by the Scheduling Order of this Court in filing its Motion to Dismiss which is based on a challenge to the subject matter jurisdiction. The filing of the motion in and of itself, though, tells nothing about the efforts put forth on the case up to

13

that point. CIBA cannot deny that 3V timely responded to its initial discovery requests and produced documents to these requests very shortly thereafter. CIBA cannot show any refusal by 3V to participate in settlement negotiations at any point during the litigation including the weeks immediately preceding the filing of the disclaimer and the motion to dismiss. In summary, CIBA has no evidence showing that 3V ignored discovery obligations or otherwise intentionally disregarded any aspect of this action.

E.    **This case does not meet the criteria of an "exceptional" case to support any award of attorneys fees under 35 U.S.C. § 285.**

CIBA has inappropriately included legal authority relating to 35 U.S.C. § 285 since it has not moved for sanctions and does not have any evidence to support its contentions that 3V failed to prosecute the above-captioned actions in good faith. As CIBA admits, it is requesting leave for discovery *expressly because* it has nothing to support the alleged "suggestion" of litigation misconduct. Nonetheless, 3V responds to the authority that was cited to confirm that this case would not qualify as "exceptional" under 35 U.S.C. § 285.

The pertinent statute for awarding attorneys' fees in patent cases is 35 U.S.C. § 285. While the statute states that such fees may be awarded in "exceptional" cases there is no definition provided for that term within the statute. Instead, the Federal Circuit has set out a nonexhaustive list of criteria to be used in deciding the question. *Aventis Cropscience, N.V. v Pioneer Hi-Bred Intern, Inc.*, 294 F.Supp.2d 739, 741-742 (M.D.N.C. 2003). This list includes (1) willful patent infringement, (2) inequitable conduct before the USPTO, (3) misconduct during litigation, and (4) vexatious or unjustified litigation or the filing of a frivolous suit, all of which examine the behavior of the party from whom the fees are sought. Id., citing *Beckman Instruments, Inc. v . LKB Produkter AB,* 892 F.2d 1547, 1553-54 (Fed.Cir. 1989). The standard requires the moving party to prove such conduct by clear and convincing evidence. Id. This

Court has also noted specifically that a moving party carries an "extremely heavy burden" in any attempt to establish entitlement to attorneys' fees. *W.L. Gore & Assoc. v. Oak Materials Group*, 424 F.Supp. 700, 703 (D.Del. 1976).

CIBA's allegation against 3V boils down to a contention that 3V had decided to disclaim its '973 patent but delayed the actual filing solely to drive up CIBA's litigation costs. CIBA has not cited any clear and convincing evidence of misconduct, however. It has claimed that 3V failed some requirement to serve it with a copy of its disclaimer upon filing but has not cited any authority establishing such a requirement. It presently has nothing aside from the timing of the filing to substantiate its claim. It cites the timing with complete disregard with the fact that the timing of 3V's motion was driven by the deadline set by the Court and the fact that 3V had informed it earlier of the fact that 3V was considering such strategy.

CIBA has cited *Microstrategy Inc. v Crystal Decisions, Inc.*, No. 03-1124-MPT, 2008 WL 7828242, at **5-6 (D.Del. Mar. 25, 2008) as supportive of its position that the timing of the disclaimer should raise a question regarding 3V's motives. The *Microstrategy* case is distinguishable from the pending actions and does not support any such general proposition. *Microstrategy* involved an infringement case filed on three patents during the pendency of two other lawsuits between the same parties. Id. at 1.[5]   In moving for attorneys' fees, Defendant Crystal Decisions (d/b/a BOA) argued that the case was exceptional because Microstrategy refused to narrow the scope of the claims in its patent, abandoned 16 of its 33 asserted claims two days before its response to a motion for summary judgment was due, and allowed a frivolous claim to go forward even though evidence of invalidity was overwhelming. Id. at *1.

---

[5] Defendant Crystal Decisions, Inc. was acquired by Business Objects Americas ("BOA") one day after Microstrategy filed its Complaint. At that time, two actions were already underway involving BOA and Microstrategy. *Microstrategy*, 2008 WL 782842 at *1.

It is the presence of evidence establishing bad faith that distinguishes Microstrategy from the facts of the instant case. Microstrategy's reassessment of its claims was prompted when BOA brought to Microstrategy's attention a mistake by Microstrategy's expert that called into question several of the claims in BOA's patent. Id. at *5. Not only did the Court take note of the fact that it took Microstrategy's expert a month to submit an unauthorized supplemental report setting forth a new theory of infringement, but the new theory was in direct contrast to representations previously made by Microstrategy before the Patent and Trademark Office. Id. While Microstrategy did reassess its claims thereafter and eliminated those not supported by its expert, it did so without explaining the expert's mistakes or its own failure to recognize them. Id. It was specifically pointed out by the Court that "[s]uch conduct ... supports bad faith especially since this court, as affirmed by the Federal Circuit, found the arguments ... so strongly in favor of BOA." Id.

The Court found Microstrategy was unreasonable in refusing to reassess the merit of claims set forth in a second patent in the face of clear and convincing evidence produced by Microstrategy in its initial discovery responses and its expert's report of anticipatory prior art. Id. at *3. Microstrategy unwisely chose a similar strategy a third time when it continued asserting claims in a third patent in the face of "overwhelming" evidence of defects in its case, including its own expert's inability to support Microstrategy's decision and prior art which disclosed an aspect of the invention that Microstrategy had argued was not disclosed. Id. at *5.

A wealth of evidence clearly established that by the time Microstrategy decided to make its reassessments and choices about prosecution of its case it had been presented with overwhelming evidence of defects and problems with its case that should have prompted its actions. As such, it was not the pure timing of Microstrategy's decisions that was suggestive of

bad faith but the fact a multitude of evidence supported that the decisions could have and should have been made earlier. This is wholly unlike the situation presented in the instant case.

It is somewhat incredible that CIBA has even attempted to label 3V's single appeal as exceptional when it has filed three of its own cases to appeal the same decision by the Board as 3V. If 3V's single appeal from the Board's decision is to be considered exceptional as CIBA contends, what inferences would that raise about CIBA's cases, which appeal the very same decision of the Board three times? Once examined, CIBA's actions actually suggest bad faith on CIBA's part in prosecuting this case: filing three separate appeals when one should have sufficed and a motion seeking discovery that CIBA itself admits is unrelated to any claims asserted in the pending appeals at a time when the claims have been rendered moot with a Motion to Dismiss having been filed for that very reason.

Finally, 3V strenuously disagrees with CIBA's conclusion that it is a prevailing party entitled to attorneys' fees. CIBA has based this conclusion on case law held out as establishing that a party prevails if "...after discovery, a claim is dismissed with prejudice". *See* CIBA's Opening Brief, p. 7, footnote 4. CIBA's reliance on *Tenax Corp. v. Tensar Corp.*, No. H-89-424, 1991 WL 336921 (D. Md. Apr. 30, 1991) is misplaced for several reasons. First, CIBA has disregarded the "after discovery" portion of the quote. The circumstances of the case at hand bear no similarity to those considered by the *Tenax* court, since extensive discovery had occurred in that case in preparation not only for the parties' trial but also for an evidentiary hearing held before an Administrative Law Judge. *Tenax*, 1991 WL 336921 at *1265. One determination of the hearing was of unenforceablility of one of the patents at issue due to inequitable prosecution before the Patent Office, which had led to the filing of the disclaimer shortly before trial. <u>Id.</u>

17

Extensive discovery was not completed before the disclaimer was filed in the case at issue. In fact, as previously noted CIBA had only made its first production of documents two weeks before the disclaimer was filed by 3V. Both parties were supplementing initial responses and neither had taken its first deposition. This case was not at the advanced stage of litigation that was present in the *Tenax* case.

Second, CIBA has completely ignored later discussions in *Tenax* in which the Court indicates that there may be more than one prevailing party in a case since awards of attorneys' fees may be made to each party on the basis of different claims presented in the case. Id. at *1267. Tenax was not considered the overall prevailing party in the case but rather was identified as the possible prevailing party for claims related to the patent that had been disclaimed, if it could establish that the case was exceptional. Id. at 1267. There was no general rule established by *Tenax* that the filing of a dismissal with prejudice determines who may be a prevailing party in a case.

Third, the prematurity of CIBA's conclusion must also be recognized. Even if CIBA could show that dismissal of a claim should establish a prevailing party in a case, it is impossible for any such determination to be made in this action since no dismissal has yet been granted in this particular case. As such, 3V respectfully submits that all discussions related to CIBA's potential motions for attorneys' fees must be deferred until when and if such a motion is actually filed.

## CONCLUSION

As 3V has demonstrated, CIBA has no evidence to support the motion for costs, fees and sanctions it has contemplated filing. CIBA is without any facts to support its theory that 3V delayed the proceedings of this case and must acknowledge 3V's cooperation with discovery efforts and settlement negotiations that did occur in this action. Moreover, the request is procedurally deficient. For these reasons, 3V respectfully requests that this Court deny CIBA's Motion for Leave and prevent the service of any additional discovery.

Dated: May 5, 2008

**STEVENS & LEE, P.C.**

Joseph Grey (I.D. No. 2358)
1105 North Market Street, Seventh Floor
Wilmington, DE 19801
Telephone: (302) 654-5180
Telecopier: (302) 654-5181
jg@stevenslee.com.

**NEXSEN PRUET, LLC**
Angelica M. Colwell (Fed. I.D. No. 9689)
PO Box 486
205 King Street, Ste. 400
Charleston, South Carolina, 29402
Telephone: (843) 577-9440
Telecopier: (843) 720-1777
acolwell@nexsenpruet.com

*Attorneys for Plaintiff 3V, Inc.*

19

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 3V, INC., a Delaware Corporation,<br><br>               Plaintiff,<br><br>      v.<br><br>CIBA SPECIALTY CHEMICALS<br>CORPORATION, a Delaware Corporation,<br><br>               Defendant. | C.A. No. 06-00593-JJF |
| CIBA SPECIALTY CHEMICALS<br>CORPORATION, a Delaware Corporation<br><br>               Cross-Plaintiff,<br><br>      v.<br><br>3V, INC., a Delaware Corporation,<br><br>               Cross-Defendant. | C.A. No. 06-00629-JJF |
| CIBA SPECIALTY CHEMICALS<br>CORPORATION, a Delaware Corporation<br><br>               Plaintiff,<br><br>      v.<br><br>3V, INC., a Delaware Corporation,<br><br>               Defendant. | C.A. No. 06-00672-JJF |

## DECLARATION OF ANGELICA M. COLWELL

I, Angelica M. Colwell, do hereby declare and state as follows:

1.    I am a Registered Patent Attorney employed by Nexsen Pruet, LLC and am counsel of record for Plaintiff, Cross-Defendant and Defendant 3V, Inc. in the above-captioned case. I have personal knowledge of the facts set forth below and if called as a witness, I could testify competently thereto.

2.    I first became involved in the above-captioned cases through a Motion for Pro Hac Vice admission to this Court filed on July 6, 2007 and granted on July 11, 2007.

3.    Less than one month later, and before any review of the file had been completed, co-counsel and I agreed to participate in the "meet and confer" requested by CIBA's counsel in order to move the cases forward. After the meet and confer, my co-counsel did receive the correspondence attached as Ex. A to Mr. Branigan's Declaration summarizing the content of the discussions and forwarded a copy to me.

4.    Per our discussion with Mr. Branigan, I sent the correspondence attached to 3V's Answering Brief as Ex. 1 to clarify 3V's responses to several of CIBA's discovery requests in response to correspondence sent to previous counsel.

5.    During the meet and confer, I inquired as to the status of CIBA's production of documents responsive to 3V's initial discovery requests, which had not yet been received. Mr. Branigan acknowledged that the documents were outstanding and promised to provide them after the meet and confer.

6.    My review of the file at that time indicated that 3V had previously responded to CIBA's discovery requests and had produced 2,759 pages of documents well before the meet and confer on June 5, 2007.

7.    Despite this representation, 3V failed to produce any documents until March 4, 2008.

8.    Since I did not initially have primary responsibility for this case I did not participate in the initial efforts made to reach a settlement in this case. However, I have been informed and believe that telephone calls were received from CIBA's counsel regarding possible settlement of the cases nearly as soon as we became involved in the case.

9.    I have been informed and believe that a settlement conference was then held with the parties in attendance on October 29, 2007.

10.    I have been informed and believe that additional negotiations occurred by telephone following the conference in November and December 2007. As a result of these

negotiations, CIBA took initial responsibility for preparing a Draft Settlement Agreement in writing to specify all terms of their settlement demand.

11.    I have been informed and believe that 3V's counsel received the Draft Settlement Agreement from CIBA's counsel on January 25, 2008.

12.    Correspondence in the file confirms that 3V's counsel provided 3V's preliminary comments to the proposed agreement on January 30, 2008 and followed that up with an email containing more specific comments to CIBA's settlement counsel on February 13, 2008. CIBA's counsel was also informed in the same correspondence that I would be taking on primary responsibility for the case due to co-counsel's upcoming maternity leave.

13.    I notified CIBA's counsel of the transfer of the case on or about March 5, 2008. Settlement negotiations began again by phone after the transfer of the case on March 10, 2008 and 3V provided a revised version of CIBA's written proposed agreement to CIBA for consideration on March 11, 2008. 3V participated fully in these settlement negotiations.

14.    On March 6, 2008, during a telephone discussion about a possible settlement, I informed CIBA's settlement counsel that 3V was considering disclaimer as a way to end the litigation if a settlement could not be reached. I indicated only that 3V had considered the decision to end the litigation but had not yet made it and would only resort to it if settlement negotiations failed.

15.    While negotiations were ongoing I was also following up on outstanding discovery issues. One of these involved depositions requested by CIBA's counsel. I was informed by 3V that two of the three witnesses identified by CIBA, Messrs. Cesani and Radaelli, resided in Italy and were not employees of 3V. It was not clear whether 3V had any power to over either of these witnesses.

16.    Although investigations had begun into whether sound legal grounds existed for 3V to object to CIBA's requests for the depositions of Messrs. Cesani and Radaelli, such research had not completed by March 20, 2008.

NPGVL1:370560.1-CSU-(AMC) 030146-00022

17.    Negotiations pertaining to specific terms of the agreement by phone until I ended the negotiations until March 13, 2008 indicating no further authority for ongoing discussions.

18.    I had no further contact with CIBA then I received the unsolicited offer of settlement referenced in paragraph 11 of Mr. Branigan's Declaration on March 21, 2008.

19.    With the complete file now in my custody I have been able to review the contents and determine actions undertaken on discovery issues while preparing the motions and responsive briefs that have been recently filed.   While preparing this response, I did locate documents pertaining to the CAS registry number and other matters which had been intended to previously be produced to CIBA.

20.    I had no knowledge prior to this discovery that these documents had not been previously produced.

21.    These documents were not intentionally withheld from CIBA and would have been produced if the cases had continued as I completed review of the file and attended to outstanding issues.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on April 30, 2008 at Charleston, South Carolina.

_____
Angelica M. Colwell

SWORN and subscribed to before me
this 5th day of May, 2008 (L.S.)

Notary Public for South Carolina
My commission expires: 04-29-2014

4                                                    NPGVL1:370560.1-CSU-(AMC) 030146-00022

# EXHIBIT
# 1

# N E X S E N | P R U E T

**Angelica M. Colwell**
Registered Patent Attorney
Admitted in MI, SC

August 16, 2007

Millen, White Zelano & Branigan, P.C.
Alan Branigan, Esq.
Brion Heaney, Esq.
Michael Culver, Esq.
220 Clarendon Blvd., Ste. 1400
Arlington, VA 22201

Re:    3V Inc. v. CIBA Specialty Chemicals Corporation
       3V's response to Mr. Branigan's letter of May 17, 2007

Dear Al:

As promised during the meet and confer held on August 10, 2007, this letter is being sent in response to the correspondence you sent on or about May 17, 2007 to Ray Stewart regarding 3V's responses to several of CIBA's interrogatories.

Concerning your interrogatory 1, on May 23, 2007 3V supplemented its initial response to with 3V 2546. We have not been provided with any other organizational chart or informed that any other chart will be forthcoming. However, to the extent that other documents that may be potentially responsive to your interrogatory may be identified during discovery, we retain all objections previously raised.

Concerning your interrogatory 2, Kevin Blakely has supervised the IT department in Georgetown since 1994.

Concerning your interrogatory 3, only desktop computers are used at Georgetown. Any work that may have been done relevant to the subject matter of the ongoing litigation by 3V employees would have been done on the following desktop models: Dell Optiplex 320 and Dell Dimension 2350, 2400, 3100 and 4500.

Concerning your interrogatories 4 and 5, only desktop computers are used at Georgetown.

**Charleston**

Charlotte

Columbia

Greensboro

Greenville

Hilton Head

Myrtle Beach

205 King Street
Suite 400 (29401)
PO Box 486
Charleston, SC  29402
www.nexsenpruet.com

**T** 843.720.1769
**F** 843.720.1777
**E** AColwell@nexsenpruet.com
Nexsen Pruet Adams Kleemeier, LLC
**Attorneys and Counselors at Law**

Millen, White Zelano & Branigan, P.C.
August 16, 2007
Page 2

Concerning your interrogatories 6 and 9, we will supplement 3V's previous response in separate correspondence.

Concerning your interrogatory 10, passwords are not assigned to individual employees by 3V and 3V does not keep any password list or log. That being said, 3V will not prevent its employees from providing the information necessary for CIBA to access relevant electronic discovery that may be stored in computers involved in the subject matter of the litigation.

Concerning your request that we withdrawn the attorney-client objection raised in response to your interrogatories 19, 24, 25 and 26, we will agree to withdraw it to the extent that it was raised regarding identification of individuals. 3V Inc. has no names to add beyond these responses previously provided.

Concerning your interrogatory 23, 3V Inc. has no additional information beyond the responses previously provided to this interrogatory and interrogatory 22.

Concerning your interrogatory 27, 3V cannot identify any more specific information than the response previously provided to this interrogatory as the specification as a whole, which is not limited to one particular structure but includes several preferred embodiments and multiple examples, gives support for the use of open-ended language in the preamble.

Concerning your interrogatory 28, 3V's initial response was appropriate given that your specific request was for 3V to "[i]dentify all documents that 3V intends to rely on...", without limiting said reliance to present or future. Moreover, we have not had an opportunity in the month that we have had this case, while still waiting the production of any documents from CIBA, to make the determinations set forth in 3V's original response to this interrogatory. As discovery in this case progresses, 3V will supplement its response to this interrogatory if warranted and to the extent required by the Federal Rules of Civil Procedure.

Finally, this letter confirms our discussion regarding the importance of preservation of ESI during the telephone conference held on August 9, 2007. We can also confirm that receiving this case, we took appropriate measures to ensure sure that 3V cease automatic deletion procedures and preserve all electronically stored information ("ESI") relevant to the subject matter of this action.

As we discussed during our telephone conversation, we look forward to receiving the documents CIBA promised to prior counsel and moving discovery forward in this case. Should you have any questions or further concerns, please do not hesitate to contact me.

Millen, White Zelano & Branigan, P.C.
August 16, 2007
Page 3

Very truly yours,

Angelica M. Colwell

AMC/

cc:    Sara Centioni Kanos

# EXHIBIT
# 2

## MILLEN, WHITE, ZELANO & BRANIGAN, P.C.
### LAW OFFICES
2200 CLARENDON BOULEVARD
SUITE 1400
ARLINGTON, VIRGINIA 22201

I. WILLIAM MILLEN
JOHN L. WHITE
ANTHONY J. ZELANO
JOHN R. MOSES
HARRY B. SHUBIN
BRION P. HEANEY
RICHARD J. TRAVERSO
ALAN E. J. BRANIGAN
JOHN A. SOPP

PHONE: 703/243-6333
TELECOPIER: 703/243-6410
E-MAIL: MAIL@MWZB.COM

JEFFREY R. COHEN
JEFFREY A. SMITH
CSARA HENTER
SCOTT J. MAJOR
DANIEL E. FISHER
MICHAEL S. CULVER
ADAM D. MANDELL
JENNIFER J. BRANIGAN
SAGUN KC

May 8, 2007

Ray Stewart, Esq.
Birch, Stewart, Kolasch & Birch, LLP
8110 Gatehouse Road
Suite 100 East
Falls Church, VA 22042-1248

RE: 3V, Inc. v. CIBA Specialty Chemicals Company
Your reference: 4000-0121L
Our reference: CIBA-0002-L

Dear Ray:

This is to follow-up on our telcon yesterday when I complained about your inadequate responses to our discovery requests. We will treat those matters further as soon as time permits, but I want to make a prompt record of a couple of obvious deficiencies.

We have received the disk containing 1501 documents in PDF format. The documents, however are not in compliance with the FRCP. They are just loose PDF document copies without any indication of the document requests to which they relate.

Secondly, you have made many claims of privilege or work product, but have not made such claims as to specific documents much less described the nature of the documents (e.g. author, recipients, date, general subject matter, bates # or the like) as required by the FRCP so that we can assess the applicability of the privilege or protection you seek.

Finally, as to the Protective Order, Two days is probably too short a time to check out an expert's affiliations. We suggest five days in 5(b)(ii)(3) and 5(c); and, , in 13(d), line two "Improper" should probably be - - proper - -. Otherwise I think we are in agreement.

Millen, White, Zelano & Branigan

By_____
Alan E.J. Branigan

# EXHIBIT
# 3

## Colwell, Angelica M.

| | |
|---|---|
| **From:** | Colwell, Angelica M. [AColwell@nexsenpruet.com] |
| **Sent:** | Wednesday, March 12, 2008 11:24 AM |
| **To:** | Rich Traverso |
| **Cc:** | Alan Branigan; Brion Heaney; john.t.miller@att.net; joann.villamizar@ciba.com; Chad Shandler; paralegal; Loggins Shiela LE US |
| **Subject:** | RE: 3V Inc. V. Ciba Specialty Chemicals, Inc. |
| **Attachments:** | np.png |

Rich and Al,

I am sending this in response to the letter that was attached to Rich's email. First, I do not understand your conclusion that "a settlement is in the offing." At the time I received Rich's email I was in communication with Mr. Miller and Ms. Villamizar to respond to the unscheduled telephone call I received from them on Monday, in which it was indicated that CIBA's demand to settle the case for $150,000 and a royalty scheme would be held open until Friday at 4:00. I did not advise either Mr. Miler or Ms. Villamizar that 3V was not agreeable to anything, rather, I advised that I would forward a copy of the Settlement Agreement drafted by CIBA with revisions added by 3V to them for review. I have done so and am awaiting their response. Further, Ms. Villamizar did not indicate that settlement would be foreclosed after Friday, March 14 but that the amount CIBA would accept would go up to $300,000.

We will have to agree to disagree on where the "substantial delays" you refer to in your letter originated. Although I was not directly involved in the settlement discussions prior to this week, my understanding of the sequence of events suggests that most of the delay in negotiations is attributable to CIBA first accepting a proposed cross-licensing arrangement and then rejecting it in favor of an exclusive licensing agreement with 3V being the licensee. I initiated communication with Mr. Miller immediately after receiving primary responsibility for the file and was told by him that he had not been able to communicate with everyone he needed to talk with about the negotiations for various reasons, including the untimely loss of Ms. Villamizar's husband. We have had several conversations since then and I have made every effort to quickly respond to Mr. Miller and Ms. Villamizar's transmittal of CIBA's demand.

All of that being said, I am also considering the possibility that we will be moving forward and working on discovery. Since 3V has already provided several thousands of pages of documents, please confirm that CIBA wishes for additional searches to be run according to the key word list provided with your letter.

I have attached the privilege log referenced in my letter by inadvertently left out of the envelope and apologize for the inconvenience. I cannot explain any actions taken by the Stewart firm, including the failure to produce the log, which may have been a simple oversight.

I will immediately look into the availability of Messrs Guido Cesani, Kevin Blakely and Raaelli Luigi for depositions. This is the first I have heard of CIBA's request, I believe, since I do not recall seeing a written request from you for their depositions following the meet-and-confer we had in August, 2007. You may recall that Sara and I did not appear in this case until mid-July, 2007.

I have not received the actual letter reference by Rich yet, but wanted to respond to the issues you have raised. I will transmit your best wishes to Sara.

Angelica Colwell


**Angelica M. Colwell**
Registered Patent Attorney
Nexsen Pruet, LLC
205 King Street, Suite 400

4/30/2008

P.O. Box 486 (29402)
Charleston, SC 29401
Direct Dial: 843.720.1769
T: 843.577.9440, F: 843.414.8201
acolwell@nexsenpruet.com
*www.nexsenpruet.com*

# NEXSEN PRUET

| Bio | vCard | Home | Practice Areas | Attorneys | Offices |

CONFIDENTIAL COMMUNICATION: The information contained in this message may contain legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this transmission is strictly prohibited. If you have received this communication in error, please notify us by telephone or email immediately and return the original message to us or destroy all printed and electronic copies. Nothing in this transmission is intended to be an electronic signature nor to constitute an agreement of any kind under applicable law unless otherwise expressly indicated. Intentional interception or dissemination of electronic mail not belonging to you may violate federal or state law.

IRS CIRCULAR 230 NOTICE: Any federal tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending any transaction or matter addressed in this communication.

**From:** Rich Traverso [mailto:traverso@mwzb.com]
**Sent:** Tuesday, March 11, 2008 5:23 PM
**To:** Colwell, Angelica M.
**Cc:** Alan Branigan; Brion Heaney; john.t.miller@att.net; joann.villamizar@ciba.com; Chad Shandler; paralegal; Loggins Shiela LE US
**Subject:** 3V Inc. V. Ciba Specialty Chemicals, Inc.

Dear Angelica
At the request of Al Branigan, I have attached a copy of a letter and attachments sent to you today via Federal Express.
If you have any questions please let me know.
Rich Traverso

4/30/2008

# EXHIBIT
# 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | C.A. No. 06-00593-JJF |
| v. | ) | |
| | ) | |
| CIBA SPECIALTY CHEMICALS | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| CIBA SPECIALTY CHEMICALS | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Cross-Plaintiff | ) | |
| | ) | C.A. No. 06-00629-JJF |
| v. | ) | |
| | ) | |
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Cross-Defendant. | ) | |
| | ) | |
| CIBA SPECIALTY CHEMICALS | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | C.A. No. 06-672-JJF |
| v. | ) | |
| | ) | |
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## 3V, INC.'S RESPONSES TO CIBA SPECIALTY CHEMICALS CORPORATION'S INTERROGATORIES

COMES NOW, Plaintiff 3V, Inc. ("3V"), by counsel, and for its responses to

Defendant CIBA Specialty Chemicals Corporation's ("CIBA") First Set of

Interrogatories ("Interrogatories") states as follows:

1

## GENERAL OBJECTIONS

3V objects to CIBA's First Set of Interrogatories and the definitions to the extent that they seek documents or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege. 3V further objects to CIBA's First Set of Interrogatories and the definitions to the extent that they seek to impose discovery duties over and above those required the Federal Rules of Civil Procedure. 3V's responses shall be made only in accordance with the applicable Rule(s) and 3V reserves its right to amend its responses to this request, if necessary. 3V objects to CIBA's First Set of Interrogatories and the definitions to the extent that they seek disclosure of information or documents that are neither relevant to the claim or defense of any party or to the subject matter involved in these actions, nor reasonably calculated to lead to the discovery of admissible evidence.

3V objects to CIBA's First Set of Interrogatories and the definitions to the extent that they seek to impose an obligation on 3V to disclose information that is publicly available and/or as easily obtained by CIBA as 3V, on the grounds that such discovery is overly broad and unduly burdensome. 3V also objects to CIBA's First Set of Interrogatories and the definitions to the extent that they seek information or documents that are already in the possession of CIBA. 3V objects to CIBA's First Set of Interrogatories to the extent it seeks any document or information that reflects or constitutes confidential and/or proprietary business information unless and until an appropriate protective order is entered.

3V objects to certain of the First Set of Interrogatories to the extent that they are premature. It is anticipated that further discovery, independent investigation and analysis

2

may supply additional facts, give new meaning to facts. or entail new factual conclusions. 3V reserves the right to revise and/or supplement its responses at a later date. The responses hereafter given and documents produced, if any, shall not be deemed or construed as (1) an admission relative to the existence or non-existence of any document, (2) as a waiver of any claim or privilege or immunity 3V may have as to any response, document or thing, or any question or right of obligation as to authenticity, admissibility or any other objection 3V may have as to a demand for further response to these or other Interrogatories, or to any objection to the use of such information document or things in any other proceeding filed after the production of such information, or documents, and (3) as an admission with respect to the relevancy or admissibility in evidence of any statement or characterization contained in CIBA's First Set of Interrogatories or respecting the authenticity, relevancy, materiality, competency or admissibility of any document or thing referenced by CIBA's First Set of Interrogatories.

### SPECIFIC OBJECTIONS AND RESPONSES

Subject to the General Objections stated above and the Specific Objections stated below, 3V states the following in response to CIBA's First Set of Interrogatories:

**Interrogatory 1**: (Individuals/organizations responsible) Identify all company organizational information including:

1.          Organizational charts for 3V; and

2.      A list of the names, titles, contact information, and job description/duties for all individuals (or organizations) responsible for maintaining electronic processing systems, networks, servers, and data security measures for 3V.

**RESPONSE NO. 1:**

3

3V objects to Interrogatory No. 1 as overly broad, unduly burdensome, and to the extent it seeks confidential proprietary information that is neither related to any claim or defense in these actions, nor likely to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and the General Objections, 3V responds as follows:

1.    It will produce a non-privileged organizational chart for 3V;

2.    Dr. Guido Cesani
      IT Manager
      Via Innocenzo XI, No. 10
      24128 Bergamo
      Italy

      Mr. Kevin Blikkely
      IT Manager
      3V, Inc.
      888 Woodstock Street
      Georgetown, SC  29440

**Interrogatory 2**: (Networks)

As to each computer network in use by 3V, identify the person(s) (past and present, including dates) responsible for the ongoing operations, maintenance, expansion, archiving and upkeep of the network.

**RESPONSE NO. 2:**

3V objects to this Interrogatory as overly broad and unduly burdensome to the extent it is not limited to the patents or products in suit or any relevant time period. Subject to and without waiver of the foregoing objections and the General Objections, 3V responds as follows:

Dr. Guido Cesani, IT Manager, is and has been since 1984 the person responsible for the network in Bergamo, Italy. Mr. Kevin Blikely, IT Manager, is and has been responsible for the network in Georgetown, South Carolina.

**Interrogatory 3**: (Hardware)

Identify and describe each computer that has been, or is currently, in use by 3V in matters involved in the subject matter of this litigation (including desktop computers, personal digital assistants (PDAs), portable, laptop and notebook computers, cell phones, etc.).

**RESPONSE NO. 3:**

Subject to and without waiver of the General Objections, the following computers have been, or are currently in use by 3V in the subject matter of this litigation:

        Desktop PC

        (a)     IBM

        (b)     Dell

        (c)     Digital

        (d)     Compaq

        (e)     HP

**Interrogatory 4**: (Software)

For each of the computers identified in the response to Interrogatory 3, identify and describe all software programs contained on said computers that relate to the subject matter of this litigation.

**RESPONSE NO. 4:**

Subject to and without waiver of the General Objections, the software programs contained on the PCs described in response to Interrogatory No. 3 include:

(a)    Microsoft Word

(b)    Microsoft Excel

(c)    Microsoft Powerpoint

(d)    Microsoft Outlook

**Interrogatory 5**: (Operating Systems)

Identify and describe all operating systems that have been, or are currently, in use by 3V relating to products, patents, and/or patent applications involved in this litigation, including, but not limited to, the operating systems installed on the computers of the Giuseppe Raspanti, Norberto Fossati, Giorgi Zanchi, Massimo Quintini, and John Schroer.

**RESPONSE NO. 5:**

Subject to and without waiver of the General Objections, the operating system installed on the PCs described in response to Interrogatory No. 3 (and as you may know, Guiseppe Raspanti is deceased) include:

      (a)     Microsoft Windows 95

      (b)     Microsoft Windows 98

      (c)     Microsoft Windows 2000 Professional

      (d)     Microsoft XP Professional

**Interrogatory 6**: (Email)

Identify all email systems in use relating to the products, patents, and/or patent applications involved in the subject matter of this litigation.

**RESPONSE NO. 6:**

Subject to and without waiver of the General Objections, the email systems include a Microsoft Exchange System and Lotus Notes.

**Interrogatory** 7: (Internet Use)

Identify any Internet policies and procedures in use by 3V, or used by 3V, from January 1, 1991 to the present.

**RESPONSE NO. 7:**

Subject to and without waiver of the General Objections, there are no written policies and procedures of the type requested. As to Italy, internet access is only available at a few work stations, such as the laboratory. As to Georgetown, supervised access is available in conference rooms.

**Interrogatory 8**: (Other Electronic Data)

Identify any other electronic data in use by 3V, or used by 3V, for products,

patents, and/or patent applications involved in the subject matter of this litigation.

**RESPONSE NO. 8:**

Subject to and without waiver of the General Objections, none is presently

known.

**Interrogatory 9**: (Data Transmission)

Describe in detail all inter-connectivity between the computer systems at 3V's various office locations.

**RESPONSE NO. 9:**

Subject to and without waiver of the General Objections, inter-connectivity occurs via a standard Ethernet LAN network.

**Interrogatory 10**: (Data security measures)

List all user identification numbers and passwords necessary for accessing the electronic processing systems or software applications requested in this First Set of Interrogatories.

**RESPONSE NO. 10:**

3V objects to the extent it seeks confidential proprietary information that is neither related to any claims or defense in these actions, nor likely to lead to discovery of admissible evidence. Subject to and without waiver of the foregoing objections and the General Objections, there are no fixed passwords which change automatically at short intervals. User identification numbers as to a particular person include the person's last name.

**Interrogatory 11**: (Supporting information).

Identify all codebooks, keys, data dictionaries, diagrams, handbooks, manuals or other documents used by 3V to interpret or read the information on any of the electronic media identified in the response to this First Set of Interrogatories.

**RESPONSE NO. 11:**

3V objects to this Interrogatory on the grounds that it is vague, undefined, calls for an unresponsive answer, overly broad, and unduly burdensome. Subject to and without waiver of the foregoing objections and the General Objections, the computer's internal application programs are sufficient to interpret or read the information and to our knowledge none of the above applies.

III. BACKUP PROTCOLS

**Interrogatory 12**: (Current Procedures)

As to data backups performed on all computer systems currently or previously in use by 3V relating to products, patents, and/or patent applications involved in the subject matter of this litigation; identify and describe the following:

      1.      All procedures and devices used to back up 3V's software and data including, but not limited to, name(s) of backup software used, and the frequency of the backup process; and

      2.      The name(s) and contact information for the individual(s) who conduct(s) the backup and the individual who supervises this process.

**RESPONSE NO. 12:**

Subject to and without waiver of the General Objections:

      1.      Backups occur daily using a tape unit and ArcServer software.

      2.      As to Italy, backup is performed by Radaelli Luigi and supervised by Dr. Guido Cesani, IT Manager and as to Georgetown, Mr. Kevin Blikely, IT Manager, performs the backup.

**Interrogatory 13**: (Backup Tapes)

Identify and describe all backup tapes in 3V's possession or under 3V's control insofar as they relate to the subject matter of this litigation.

**RESPONSE NO. 13:**

Subject to and without waiver of the General Objections, backup tapes are kept on a rolling one year calendar basis for the server and not as to a specific matter.

IV. SPOILATION OF ELECTRONIC EVIDENCE

**Interrogatory 14**: (Document Retention and Destruction Policies)

Identify and attach any and all versions of document/data retention or destruction policies used by 3V since January 1, 1991.

**RESPONSE NO. 14:**

Subject to and without waiver of the General Objections, paper documents as to fiscal/accounting matters are kept for ten years to comply with Italian law. There is no policy regarding other documents; some laboratory documents are retained as determined by the person who maintains his own file. Electronic data is stored within the computer, except for backup tapes as described in response to Interrogatory No. 13.

**Interrogatory 15**: (Document Destruction)

Identify any data relating to products, patents, and/or patent applications involved in the subject matter of this litigation, that has been deleted, physically destroyed, discarded, damaged (physically or logically), or overwritten, whether pursuant to a document retention or destruction policy or otherwise, since the commencement of Interference No. 105,262.

**RESPONSE NO. 15:**

Subject to and without waiver of the General Objections, to the knowledge of 3V, data has not been deleted or destroyed.

**Interrogatory 16**: (Organizations or Individuals Responsible)

Identify any individuals or organizations that are/were responsible for creating, implementing or retaining any and all versions of 3V's document retention or destruction policies identified by 3V in response to this First Set of Interrogatories.

**RESPONSE NO. 16:**

3V objects to this Interrogatory on the grounds that it is vague, undefined, calls for an unresponsive answer, overly broad, and unduly burdensome. Subject to and without waiver of the foregoing objections and the General Objections, the accounting department makes decisions regarding fiscal/accounting matters and the technical person makes decisions regarding matters relating to his job.

**Interrogatory 17**: (Meetings or Documents Discussing Document/Data Destruction) Identify with specificity any meetings or conversations referencing document spoliation in relation to the subject matter of this litigation.

**RESPONSE NO. 17:**

Subject to and without waiver of the General Objections, no meetings or conversations occurred relative to document retention/destruction in relation to the subject matter of this litigation. As to document retention/destruction generally, please see response to Interrogatory No. 14.

V.    SPECIFIC INTERROGATORIES

**Interrogatory 18**:

With respect to the count of Interference No. 105,262, if 3V intends to rely on an actual reduction to practice prior to the US filing date of US Patent No. 5,658,973, identify the date of 3V's earliest actual reduction to practice of the subject matter of said count, and all documents relating to said earliest actual reduction to practice.

**RESPONSE NO. 18:**

3V objects to this request to the extent it seeks information that is protected from disclosure by the attorney-client privilege and/or work product doctrine. Subject to and without waiver of these or the General Objections, at this time, 3V does not intend to rely on an actual reduction to practice prior to the July 26, 1995 filing date of the application which issued as U.S. Patent No. 5,658,973.

**Interrogatory 19**:

Identify current and past employees of 3V most knowledgeable about each experiment conducted by or for 3V regarding the subject matter of the count of Interference No. 105,262.

**RESPONSE NO. 19:**

3V objects to this interrogatory as overly broad and unduly burdensome, particularly to the extent it seeks the identification of those "most knowledgeable" of the referenced topic. 3V further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Subject to and without waiver of the foregoing objections and the General Objections, 3V identifies the following individuals:

    (a)    Dr. Giuseppe Raspanti (deceased)

    (b)    Dr. Massimo Quintini

    (c)    Dr. Giorgio Zanchi.

**Interrogatory 20**:

Identify all individuals involved in conducting the experiments and/or analyses described in Raspanti Exhibit 1001 in Interference No. 105,262.

**RESPONSE NO. 20:**

Subject to and without waiver of the General Objections, 3V identifies Dr. Giorgio Zanchi.

**Interrogatory 21**:

Identify all individuals involved in conducting the experiments and/or analyses described in Raspanti Exhibit 1012 in Interference No. 105,262.

**RESPONSE NO. 21:**

Subject to and without waiver of the General Objections, 3V identifies:

      (a)     Dr. Massimo Quintini

      (b)     Dr. Massimo Fabi (analytical work)

      (c)     Dr. Ferruccio Berté (preparation of analysis)

**Interrogatory 22:**

Identify and define by structural formula all components of the composition of

UVASORB HA 88.

**RESPONSE NO. 22:**

Subject to and without waiver of the General Objections, the composition

marketed under the trademark UVASORB HA88 is a polymer, a complex mixture

containing many different reaction products, including – as identified on a Material

Safety Data Sheet (Gugumus Exhibit 2005) – 1,3-propanediamine, N,N''-1,2-

ethanediylbis-, polymer with 2,4,6-trichloro-1,3,5-triazine, reaction products with N-

butyl-2,2,6,6-tetramethyl-4-piperidineamine.  The complex mixture is believed to also

contain some residual starting materials, residual intermediary reaction products, isomers

of the principal product, etc.  3V does not know the structural formula of all components

of the composition marketed under the trademark UVASORB HA88.

**Interrogatory 23**:

Identify all photostabilization agents present in UVASORB HA 88 and their respective weight concentrations, in weight %, in UVASORB HA 88.

**RESPONSE NO. 23:**

Subject to and without waiver of the General Objections, this Interrogatory implies that UVASORB HA88 contains photostabilization agents, which is untrue and denied; UVASORB HA88, which is itself a photostabilization agent, does not contain photostabilization agents.

**Interrogatory 24**:

Identify the current and past employees most knowledgeable about the structure, composition, and manufacture of 3V's UVASORB HA 88.

**RESPONSE NO. 24:**

3V objects to this interrogatory as overly broad and unduly burdensome, particularly to the extent it seeks the identification of those "most knowledgeable" of the referenced topic. 3V further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Subject to and without waiver of the foregoing objections and the General Objections, 3V identifies the following individuals:

    (a)    Dr. Giuseppe Raspanti (deceased)

    (b)    Dr. Massimo Quintini

    (c)    Dr. Giorgio Zanchi

    (d)    Dr. Ferrucci Berté

**Interrogatory 25**:

Identify the current and past employees most knowledgeable about 3V's Application for Extension of Patent Term under 35 U.S.C. § 156 for US Patent No. 5,658,973.

**RESPONSE NO. 25:**

3V objects to this interrogatory as overly broad and unduly burdensome, particularly to the extent it seeks the identification of those "most knowledgeable" of the referenced topic. 3V further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Subject to and without waiver of the foregoing objections and the General Objections, 3V identifies the following individuals:

      (a)    John Schroer

**Interrogatory 26:**

Identify the current and past employees most knowledgeable about 3V's Food Additive Petition FAP 1 B4277.

**RESPONSE NO. 26:**

3V objects to this interrogatory as overly broad and unduly burdensome, particularly to the extent it seeks the identification of those "most knowledgeable" of the referenced topic. 3V further objects to this interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Subject to and without waiver of the foregoing objections and the General Objections, 3V identifies the following individuals:

      (a)    John Schroer

**Interrogatory 27:**

Identify, by page and line number, the sections of the specification of US patent application Serial No. 08/507,197, which issued as US Patent No. 5,658,973, that provide support for the amendment to claim 1 made in the Amendment filed July 15, 1996 in Serial No. 08/507,197.

**RESPONSE NO. 27:**

3V objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or work product doctrine. Subject to and without waiver of the foregoing objections and the General Objections, the Amendment in question changed the initial part of claim 1 (the preamble and the transitional phrase) from "a composition for the stabilization of synthetic polymers consisting of" components a) and b) to "a composition for the stabilization of synthetic polymers comprising" components a) and b). The change in the transitional phrase was based upon the disclosure of the invention from line 16 on page 2 through line 28 on page 15 of application Serial No. 08/507,197, which disclosure implicitly teaches that there is no need to limit claim 1 to exclude materials in addition to components a) and b).

**Interrogatory 28**:

Identify all documents that 3V intends to rely on regarding 3V's assertion in its Counterclaim filed November 21, 2006, in C. A. No. 06-672 that US Patent No. 6,380,286 is invalid.

**RESPONSE NO. 28:**

3V objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or work product doctrine. It is also premature because discovery is in the early stages and investigation is ongoing. Subject to and without waiver of the foregoing objections and the General Objections the Counterclaim in question "contends that the '286 patent is invalid, unenforceable *or* void" (emphasis supplied). 3V has not made a final determination on whether 3V will continue to assert its arguments of invalidity or instead merely assert unenforceability. 3V anticipates that documents and information provided by CIBA in the course of discovery will enable 3V to make its final determination of whether the '286 patent is invalid, unenforceable *or* void, and whether it will continue to make such assertions.

AS TO OBJECTIONS:

Dated: April __, 2007                    STEVENS & LEE, P.C.


By: _____
Joseph Grey (ID 2358)
1105 North Market Street, Seventh 146 and
C.F.R. Floor
Wilmington, DE 19801
Telephone: (302) 654-5180
Telecopier: (302) 654-5181
E-Mail: jg@stevenslee.com

Raymond C. Stewart
Quentin R. Corrie
Birch, Stewart, Kolasch & Birch, LLP
8110 Gatehouse Road, Suite 100 East
Falls Church, VA 22040-0747
(703) 205-8000

*Counsel for 3V, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was mailed, postage prepaid, this _____ day of April, 2007, to:

Chad M. Shandler, Esquire
Richards Layton & Finger
One Rodney Square, 10th Floor
P.O. Box 551
Wilmington, DE  19899

Al Branigan, Esquire
Millen, White, Zelano & Branigan
Suite 1400
Arlington Courthouse Plaza I
2200 Clarendon Boulevard
Arlington, VA  22201


_____
Quentin R. Corrie

# EXHIBIT
# 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff | ) | C.A. No. 06-00593-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| CIBA SPECIALTY CHEMICALS | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| CIBA SPECIALTY CHEMICALS | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Cross-Plaintiff | ) | C.A. No. 06-00629-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Cross-Defendant. | ) | |
| | | |
| CIBA SPECIALTY CHEMICALS | ) | |
| CORPORATION, a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff | ) | C.A. No. 06-672-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| 3V, INC., a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

Birch, Stewart, Kolasch & Birch, LLP
8110 Gatehouse Road, Ste 100 East
Falls Church, VA 22042-1210
Tel: 703-205-8000 Fax: 703-205-8050

## 3V, INC.'S RESPONSES TO CIBA SPECIALTY CHEMICALS CORPORATION'S REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES NOW, Plaintiff 3V, Inc. ("3V"), by counsel, and for its responses to

Defendant CIBA Specialty Chemicals Corporation's ("CIBA") First Set of Requests for

Production of Documents and Things responds as follows:

and/or work product doctrine. Subject to and without waiving these or the General Objections, 3V will produce non-privileged documents in its possession, custody or control, if any exist, that are responsive to this request.

cc.    All documents relating to Interference No. 105,262.

**RESPONSE TO NO. 9cc:**

3V objects to this request on the grounds it is overly broad, vague, ambiguous, unduly burdensome and to the extent it seeks information protected from disclosure by the attorney-client privilege and/or work product doctrine. Subject to and without waiving these or the General Objections, 3V will produce non-privileged documents in its possession, custody or control, if any exist, that are responsive to this request.

dd.    All documents relating to the strategy and submissions made in obtaining the registration: CAS No. 136504-96-6.

**RESPONSE TO NO. 9dd:**

3V objects to this request on the grounds it is overly broad, unduly burdensome, vague, ambiguous and that it is neither relevant to any claim or defense in these actions, nor reasonably calculated to lead to the discovery of admissible evidence. 3V also objects to this request to the extent it seeks and document or information that reflects or constitutes confidential and/or proprietary business information, that is protected from disclosure by the attorney client privilege and/or work product doctrine. Subject to and without waiving these or the General Objections, 3V will produce non-privileged documents in its possession, custody or control, if any exist, that are responsive to this request.

Birch, Stewart, Kolasch & Birch, LLP
8110 Gatehouse Road, Ste 100 East
Falls Church, VA 22042-1210
Tel: 703-205-8000 Fax: 703-205-8050

22

## CERTIFICATE OF SERVICE

I, Joseph Grey, hereby certify that, on this 5th day of May 2008, and in addition to the service provided by the Court's CM/ECF system, I caused true and correct copies of the foregoing Reply to be served on counsel for CIBA Specialty Chemicals Corporation by first class, United States mail, postage prepaid and addressed as follows:

Chad M. Shandler, Esquire
Richards Layton & Finger
One Rodney Square, 10th Floor
P.O. Box 551
Wilmington, DE 19899

Alan E.J. Branigan, Esquire
Millen White Zelano & Branigan, P.C.
2200 Clarendon Boulevard
Suite 1400
Arlington, VA 22201

Joseph Grey